**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| In re ) | |
| ) | |
| Michael A. Willner ) | |
| ) | Case No. 12-17322-BFK |
| Debtors. ) | Chapter 11 |
| _____ ) | |

**DEBTOR'S CHAPTER 11 PLAN
DATED January 4, 2016**

      Michael A. Willner ("Debtor"), Debtor in Possession, through the undersigned counsel, hereby submits to his creditors, as proponent, this Plan of Reorganization (the "Plan") pursuant to Section 1121, et seq., of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

      A detailed discussion of the Plan and its implementation is found in the Disclosure Statement of even date herewith. The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

**ARTICLE I - DEFINITIONS**

      1.1 Administrative Bar Date" means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims other than the fees of Debtor's counsel must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

      1.2 "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date if applicable, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

      1.3 "Allowed Claim" means a Claim against the Debtor (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An

Daniel M. Press, VSB# 37123
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
Counsel for Debtor

Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

 1.4 "Assets" means all property, real or personal, in which the Debtor(s) has/have an interest.

 1.5 "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

 1.6 "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

 1.7 "Bankruptcy Code" means Title 11 of the United States Code.

 1.8 "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Virginia, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

 1.9 "Bankruptcy Rules" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

 1.10 "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The Bar Date was April 17, 2013.

 1.11 "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the State of Virginia are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

 1.12 "Case" means the case commenced under Chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court, and bearing Case No. 12-17322-BFK.

 1.13 "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

 1.14 "Claim" means a claim as defined in § 101(5) of the Bankruptcy Code.

 1.15 "Claimant" means a Person holding a Claim against the Debtor(s).

 1.16. "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

 1.17 "Collateral" means any property or interest in property of the Debtor(s) subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

 1.18 "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

 1.19 "Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

 1.20 "Confirmation Hearing" means the hearing under § 1128 of the Bankruptcy Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it may be continued from time to time.

 1.21 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

 1.22 "Creditor" means the holder of a Claim.

 1.23 [Reserved]

 1.24 "Debtors or Debtor" means Michael A. Willner.

1.25 "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.26 "Disputed Claim" means a Claim:
(a) which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended, or
(b) which is listed as disputed under any provision of this Plan, or
(c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27 "Effective Date" means the first Business Day after the Confirmation Order becomes a Final Order.

1.28 "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29 "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Court upon timely objection.

1.30 "Estate" means the bankruptcy estate(s) of the Debtor.

1.31 "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor(s) was/were a party on the Petition Date and which were executory within the meaning of § 365 of the Bankruptcy Code and which may be assumed or rejected by the Debtors.

1.32 "Final Decree" means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33 "Final Order" means an order or judgment of the Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34 "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35 "Lien" has the meaning set forth in §101(37) of the Bankruptcy Code.

1.35A "Material Default" of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 21 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to move to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.36 "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.37 "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.38 "Petition Date" means December 13, 2012, the date on which the voluntary petition for relief under Chapter 11 of the Bankruptcy Code was filed by the Debtor.

1.39 "Plan" means this Plan, as it may be amended from time to time.

1.40 "Priority Claim" means a Claim made pursuant to § 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Professional Claim.

1.41 "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

1.42 "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Bankruptcy Code.

1.43 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time prior to the Confirmation Date.

1.44 "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.45 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Bankruptcy Code and applicable law, and as are Allowed by the Bankruptcy Court.

1.46 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.47 "Secured Claim" means any Claim, debt, or demand against the Debtor(s) as determined in accordance with § 506(a) of the Bankruptcy Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor(s), but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.48 "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49 "Unliquidated Claim" means Any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.50 "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Bankruptcy Code.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

2.1    Class A (Priority (non-tax) Claims):  Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims.  The Debtor is unaware of any such claims, and no proofs of claim in this class have been filed.

4

2.2. <u>Class B (U.S. Bank N.A. secured claims)</u>: Class B consists of the filed secured claim of U.S. Bank, N.A. secured by Debtor's residence (Claim #7).

2.3. [INTENTIONALLY OMITTED]

2.4. <u>Class D (Unsecured claims owed jointly with Marguerite Willner)</u>: Class D consists of all allowed unsecured claims that are jointly owed with Debtor's wife, Marguerite Willner. Claims in this class are:

| | | |
|---|---|---|
| Claim #1 | Discover Bank | $16,233.74 |
| Claim #3 | First National Bank of Omaha | $12,444.37 |
| Scheduled | Col. & Mrs. David Wagner | $72,200 |

2.5. <u>Class E (General Unsecured Claims)</u>. Class E consists of all General Unsecured Claims. Claims in this class are:

| | | |
|---|---|---|
| Claim #2 | Wells Fargo | $8929.26 |
| Claim #4 | FIA Card Services, N.A. | $32,206.80 |
| Claim #5 | FIA Card Services, N.A. | $9572.66 |
| Claim #8 | American Express | $39,908.38 |
| Claim #9 | Mass. Ed. Fin. Auth. | $70,200.00 |
| Scheduled | Chase | $18,418.95 |
| Scheduled | Chase | $18,142.99 |
| Scheduled | Joyce Willner | $15,000 |
| Scheduled | Fed Loan Servicing | $12,706 |
| Scheduled | Fed Loan Servicing | $11,782 |

## ARTICLE III– TREATMENT OF CLAIMS AND INTERESTS

3.1. <u>Administrative Expenses (Unclassified)</u>: Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the effective date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due.

Within this class are all pre-confirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the effective date of the Plan, if not paid sooner. After confirmation, and until the case is closed, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

3.2. <u>Priority Taxes</u>: The Debtor is unaware of any tax claims, and no such claims have been filed. To the extent any such claims exist, they shall be paid in full, with interest

5

at the statutory rate on such claims, in equal quarterly cash payments commencing on the effective date of the plan, amortized over the remaining period of 5 years from the Petition Date, unless a different treatment is agreed to or provided for in the Plan.

3.3    <u>Class A (Priority (non-tax) Claims)</u>:  The Debtor is unaware of any Class A claims, and no proofs of claim in this class have been filed.   In the unlikely event that there are any allowed Claims in Class A, they shall be paid in full, in cash, by the Debtor on the effective date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan.

3.4.   <u>Class B (U.S. Bank N.A. secured claims)</u>:  The filed secured claim of U.S. Bank, N.A. secured by Debtor's residence (Claim #7) shall retain its lien to the extent it exists.  The automatic stay as to the property securing the claim has already been terminated.  The Class B claim shall entitled to exercise all non-bankruptcy rights and remedies which it may have as to the collateral securing the claim, and its claim shall be paid in full therefrom to the extent allowed.

3.5.   <u>INTENTIONALLY OMITTED</u>

3.6.   <u>Class D (Unsecured claims owed jointly with Marguerite Willner)</u>: All allowed unsecured claims that are jointly owed with Debtor's wife, Marguerite Willner, shall be paid in full, with interest at the federal judgment rate from the effective date of the plan until paid, from the payoff of the note from the sale of the land, to the extent the claims are allowed.

3.7.   <u>Class E (General Unsecured Claims)</u>.  Holders of Class E claims shall be paid, pro rata, a total of $37,435.00, to be paid upon the payoff of the note from the sale of the land.  In addition, the Class E claims will be paid 100% of the net proceeds of (a) the Debtor's note payable from AlphaGrip as and when paid, and (b) 100% of the Debtor's net proceeds of his claims against his purported mortgage creditor and its agents.  Net proceeds shall be the Debtor's share of the proceeds after legal fees and costs of litigation or otherwise pursuing the claims.

3.8 <u>AS TO ALL CLAIMS</u>:

3.8.A. The pro-rata share of the claimed amount of any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in an interest bearing bank account (or, if under $20,000, in Debtor's counsel's trust account) until a Final Order is entered.  When Final Orders are entered disallowing or allowing and liquidating all claims in Class E, the remaining funds set aside for that class shall be distributed to the holders of all Class E claims pro rata. Payments on all claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court.  Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor.

3.8.B.  If any claim listed as being in Class E contends that it is a joint claim with Marguerite Willner entitled to treatment under Class D, it must file a timely objection to the Plan in order to establish the joint nature of the liability.

6

3.8.C. If any unsecured creditor that was scheduled or filed a proof of claim maintains that it is not correctly listed under Class D or E, it must file a timely objection to the Plan. Upon confirmation, the listing of unsecured claims herein shall be final and binding on all creditors.

### ARTICLE IV - EXECUTION OF PLAN

The Debtor shall fund this Plan from the proceeds of the sale of the undeveloped lot, and any proceeds from the sale of the home, both owned as tenants by the entireties, and from a contribution from Debtor's wife.

The proceeds of the sale of the lot shall be paid, first, to unpaid legal fees, and second, to the Class D claims, and should be sufficient to satisfy such claims in full.

The Debtor's wife will give to the Debtor as new value an amount sufficient to pay the Class E claims and any additional administrative expenses.

The Debtor and his wife shall continue to market the residence for sale with Mr. Margenau (or any successor agent) until either it is sold or foreclosed. The property may be sold by the Debtor without further motion for approval in the event it is sold for a net amount sufficient to satisfy the Class B claim to the extent allowed and any capital gains taxes on the sale. In the event the property is foreclosed, it shall be deemed abandoned by the estate immediately prior to the foreclosure sale, so that capital gains tax shall not be the liability of the bankruptcy estate. Any sale or transfer, whether by private sale or foreclosure, shall be exempt from recordation and transfer taxes pursuant to 11 U.S.C. § 1146(a).

In addition, the Debtor will pursue his claims against his purported mortgage creditor and its agents, and will continue to seek to monetize the assets of AlphaGrip, Inc., so that it can pay its note, and shall pay those proceeds to creditors as provided.

On the Effective Date of the Plan, the Debtor's existing equity interests in the Estate shall be cancelled. The sum of $37,435 shall be paid by Mrs. Willner as new value to reacquire the equity in the Estate, plus any additional amount necessary to pay administrative claims in full.

The Debtor shall retain the Assets of the estate (except any assets being sold), and shall therewith conduct his affairs and pay his ordinary living expenses while paying the creditors the amounts set forth in this plan. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves their right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue any claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for

in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

## ARTICLE V - RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor and his Assets for the following purposes until the Court enters an Order closing this case:

A. To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part. The Debtor reserves the right to file objections to any Claims, either as currently filed or as may be amended.

B. To hear and determine all adversary proceedings and contested matters;

C. To allow and approve or disapprove any administrative expenses not previously allowed;

D. To determine and resolve questions concerning the existence of defaults under the Plan;

E. To modify the Plan pursuant to § 1127(b) of the Code;

F. To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G. To issue any Order necessary to carry out the Plan.

## ARTICLE VI - EXECUTORY CONTRACTS AND LEASES

Any pre-petition Executory Contracts and Leases in effect as of the Effective Date and not specifically assumed will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor or his Estate, Assets, or properties. All Rejection Claims shall be Class E General Unsecured Claims.

**The Debtor maintains that there are no cure amounts necessary with respect to the assumption of any Executory Contract or/and Lease assumed hereunder, and that there are no pre- or post-petition defaults on any such contract or lease. To the extent that any party to any such Executory Contract or/and Lease maintains that there is an amount due to cure any pre- or post-petition default, it must file a timely objection to this plan asserting the amounts claimed to be due. Absent such an objection, all leases and contracts shall be deemed current as of the confirmation date.**

## ARTICLE VII - MODIFICATION OF PLAN

The Debtor may alter, amend, or modify the Plan under § 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code. The Debtor may also alter, amend, or modify the Plan under § 1127(b) of the Bankruptcy Code, following the Confirmation Date but prior to the Effective Date. The Debtor may revoke or withdraw the Plan prior to the Confirmation Date. If the Plan is revoked or withdrawn prior to the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn prior to the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to § 1127(e).

## **ARTICLE VIII - DISCHARGE AND CLOSING**

A. Upon completion of all payments due under the plan, the Debtor shall be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code. Any payment on the Class E claims from the proceeds of the Note or litigation shall not be deemed payments under the plan for purposes of Code § 1141(d)(5)(A), such that the Debtor shall be entitled to his discharge upon completion of payments from the sale of the property.

B. Upon substantial consummation of the plan, the case shall be closed, but shall be subject to reopening to enforce the terms of this Plan.

## **ARTICLE IX - MISCELLANEOUS**

No creditor may take any collection action against Debtor or property of the estate or of the Debtor so long as Debtor is not in Material Default in performing his obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under Virginia law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

Dated:    January 4, 2016.

Respectfully submitted,

 /s/ Daniel M. Press
Daniel M. Press, VSB 37123
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
(703) 734-0590 fax
dpress@chung-press.com