**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Michael A. Willner | ) | |
| | ) | Case No. 12-17322-BFK |
| Debtor. | ) | Chapter 11 |
| | ) | |

**DISCLOSURE STATEMENT IN SUPPORT OF**
**DEBTOR'S CHAPTER 11 PLAN**
**DATED January 4, 2016**

**Michael A. Willner,** Debtor in Possession, through the undersigned counsel, hereby submits to his creditors this Disclosure Statement in connection with his Chapter 11 Plan dated January 4, 2016 (the "Plan") pursuant to Chapter 11 of Title 11, U.S.C. (the "Code").

### I.    Preliminary Statement

The Debtor submits this Disclosure Statement to all of his creditors in order to comply with the provisions of the Code requiring the submission of information necessary for creditors to arrive at an informed decision in exercising their rights to vote for acceptance or rejection of the Plan, presently on file with the United States Bankruptcy Court for the Eastern District of Virginia (the "Court"). A copy of the Plan accompanies this Disclosure Statement.

### II.    Summary of Plan and Code Provisions for Voting

#### A.    Repayment of Creditors

The Plan provides for payment of administrative expenses, priority claims, and secured creditors in full, either in cash or in deferred cash payments, or through surrender of collateral, and provides for payments to unsecured creditors in an amount greater than they would receive in the event of a Chapter 7 liquidation – payment in full for creditors that have joint claims against Debtor and his wife, and payment of $37,435 to other non-joint creditors. Funds for implementation of the Plan will be derived from the sale of real estate owned as tenants by the entireties by Debtor and his wife, with possible additional sums from litigation.

Daniel M. Press, VSB# 37123
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101
(703) 734-3800
Counsel for Debtor

This Disclosure Statement contains a detailed discussion of the Plan and its implementation. This Disclosure Statement should be read in conjunction with the Plan, which is a legal document and upon confirmation will become binding on the Parties. Creditors should read the Plan and this Disclosure Statement in their entirety, rather than relying on this summary. The Debtor urges creditors and other parties in interest to consult with independent counsel in connection with their decision to accept or reject the Plan. Approval of this Disclosure Statement by the Court is not a decision on the merits of the Plan.

### B.   VOTING PROCEDURES AND CONFIRMATION REQUIREMENTS

1.   Ballots and Voting Deadline.

A Ballot[1] to be used for voting to accept or reject the Plan will be distributed, along with this Disclosure Statement and the Plan, upon approval of the Disclosure Statement by the Bankruptcy Court. Creditors and Equity Interest holders of the Debtor must (1) carefully review the Ballot and instructions thereon; (2) execute the applicable Ballot; and (3) return the completed Ballot to Chung & Press, P.C., Attn: Daniel M. Press, Esq., 6718 Whittier Ave., Suite 200, McLean, Virginia 22101 so as to be received by 5:00 p.m. on _____. Ballots received after the deadline will not be considered.

2.   Creditors Entitled to Vote.

Any Creditor or Equity Interest holder of the Debtor whose Claim or Equity Interest is impaired under the Plan is entitled to vote, provided that (1) its Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent or unliquidated), or (2) it has filed a Proof of Claim on or before the last date set by the Court for such filing, and no objection to such Proof of Claim is pending at the time of the confirmation hearing. Any Class of Claims or Equity Interests that is not impaired by the Plan, and each holder of a Claim or Equity Interest of such Class, are conclusively presumed to have accepted the Plan and solicitation of acceptances with respect to such Class from the holders of Claims or Equity Interests of such Class is not required.

Any Claim or Equity Interest as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Court temporarily allows the Claim or Equity Interest in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by the Creditor or holder of an Equity Interest whose Claim or Equity Interest is subject to objection. In addition, the vote of a Creditor or holder of an Equity Interest may not be counted if the Court determines that the Creditor's or Equity Interest holder's acceptance or rejection was not solicited or procured in accordance with the provisions of the Bankruptcy Code.

Even though a creditor may not choose to vote or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted

---

[1] Under the Plan, the term "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

by the requisite majorities in each class of creditors and/or is confirmed by the Court. Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or will be made will be allowed only for distribution after determination by the Court. Such determination may be made after the Plan is confirmed.

      3.      <u>Definition of Impairment.</u>

Under § 1124 of the Bankruptcy Code, a Class of Claims or Equity Interests is impaired under a plan of reorganization unless, with respect to each Claim or Equity Interest of such Class, the plan (1) leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim or Equity Interest, or (2) reinstates the Claim or Equity Interest pursuant to its original terms and cures any default.

      4.      <u>Classes Impaired Under the Plan.</u>

Creditors holding Claims or Equity Interests in Classes D and E are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan. Creditors holding Claims in Class A and B are unimpaired under the Plan and are not entitled to vote with respect to the acceptance or rejection of the Plan. Such Creditors will be paid in full or otherwise treated in accordance with the provisions of the Plan.

      5.      <u>Vote Required for Class Acceptance</u>.

The Bankruptcy Code defines acceptance of a Plan by a Class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Allowed Claims of that Class which actually cast ballots to accept or reject the Plan. The Bankruptcy Code defines acceptances of a Plan by a Class of Equity Interests as acceptance by holders of two-thirds in amount of the Allowed Equity Interests of such Class held by holders of such Equity Interests who actually cast ballots to accept or reject the Plan.

      6.      <u>Requirements for Confirmation.</u>

In order to be confirmed (i.e., approved) by the Bankruptcy Court, the Plan or its proponent must (among other requirements set forth in § 1129 of the Bankruptcy Code):
      a.      Disclose all compensation paid or promised for professional services rendered or to be rendered in connection with the case;
      b.      Disclose the identity and affiliations of all officers to serve after the Plan is confirmed and the compensation of any insiders to be employed after Confirmation;
      c.      Propose to pay each member of a class of Claimants, who has not accepted the Plan, property at least equal in value to what the Claimant would receive if the Debtor's assets were liquidated on the date of the Confirmation Hearing, and distributed to Creditors according to their rights and priorities under law;
      d.      Propose to pay all Administrative Claims in full;

      e.      Propose to pay all Priority Claims in full in deferred payments or cash; and

      f.      Propose to pay all Priority Tax Claims in full within five years after the order for relief in this case, in a manner not less favorable than the non-priority unsecured claims.

      7.      <u>Confirmation Hearing</u>.

      The Bankruptcy Code requires that the Bankruptcy Court hold a Confirmation Hearing with notice to all Creditors. The Confirmation Hearing is scheduled for _____ before the Honorable Brian F. Kenney, United States Bankruptcy Judge, Courtroom III, 200 S. Washington Street, Alexandria, VA 22314. The Confirmation Hearing may be adjourned or continued by the Bankruptcy Court without further notice except for an announcement made of the adjourned or continued date made at the Confirmation Hearing.

      At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan. With respect to creditor acceptance of the Plan, if the requisite members of an impaired Class do not vote to accept the Plan as provided in Section II.B.5. above, the Debtor may seek confirmation pursuant to § 1129(b) of the Bankruptcy Code, known as the "cramdown" procedure. Pursuant to this section, the Bankruptcy Court may confirm the Plan notwithstanding the nonacceptance by an impaired Class if at least one impaired Class votes to accept the Plan, the Plan does not discriminate unfairly, and is "fair and equitable" to the non-accepting Class.

      A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if no Class receives more than it is legally entitled to receive for its Claims or Equity Interests. The Bankruptcy Code establishes different "fair and equitable" standards for Secured and Unsecured Claims.

      With respect to a Secured Claim, a plan may be "fair and equitable" if (1) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its liens, (2) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (1) and (3) hereof, or (3) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the plan.

      With respect to an Unsecured Claim, a plan may be "fair and equitable" if (1) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim, or (2) the holder of any Claim or Interest that is junior to the claims of the dissenting Class will not receive any property under the plan, except that, as the Debtor is an individual, he may retain exempt property and property included in the estate under 11 U.S,C, § 1115, namely property acquired after commencement of the case and post-petition earnings.

Finally, it must be noted that even though a Creditor or holder of an Equity Interest may vote to reject the Plan, such rejection of a confirmed Plan does not mean that the Creditor or holder of an Equity Interest will not be entitled to share in any distributions to be made under the Plan.

### III.    REQUISITE DISCLOSURES

A.    Representations Limited

NO REPRESENTATIONS CONCERNING THE DEBTOR, PARTICULARLY REGARDING FUTURE BUSINESS OPERATIONS OR THE VALUE OF THE DEBTOR'S ASSETS, HAVE BEEN AUTHORIZED BY THE DEBTOR EXCEPT AS SET FORTH IN THIS STATEMENT.  YOU SHOULD NOT RELY ON ANY OTHER REPRESENTATIONS OR INDUCEMENTS PROFFERED TO YOU TO SECURE YOUR ACCEPTANCE OR REJECTION IN ARRIVING AT YOUR DECISION IN VOTING ON THE PLAN.  ANY PERSON MAKING REPRESENTATIONS OR INDUCEMENTS CONCERNING ACCEPTANCE OR REJECTION OF THE PLAN SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR AT THE ADDRESS ABOVE, TO THE CLERK OF THE COURT AT 200 S. WASHINGTON STREET, ALEXANDRIA, VA 22314 AND TO THE U.S. TRUSTEE AT 115 SOUTH UNION ST., SUITE 210, ALEXANDRIA, VIRGINIA 22314.  FOR VARIOUS REASONS, THE RECORDS OF THE DEBTOR PRIOR TO PREPARATION OF THIS PLAN MAY NOT HAVE BEEN COMPLETE AND THE ACCURACY OF THE INFORMATION SUBMITTED WITH THIS STATEMENT IS DEPENDENT ON INFORMATION AVAILABLE TO THE DEBTOR WITH THE ASSISTANCE OF COUNSEL.  WHILE EVERY EFFORT HAS BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, THE DEBTOR ARE UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY.  THERE ARE NO KNOWN INACCURACIES.  WHILE EVERY EFFORT HAS BEEN MADE TO ENSURE THAT THE ASSUMPTIONS ARE VALID AND AS ACCURATE AS CAN BE MADE UNDER THE CIRCUMSTANCES, NEITHER THE DEBTOR NOR HIS ATTORNEYS UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE ASSUMPTIONS OR PROJECTIONS.

NO FORMAL APPRAISALS HAVE BEEN UNDERTAKEN OF THE DEBTOR'S PROPERTY EXCEPT AS STATED HEREIN.  THE VALUES PLACED THEREON AND SUMMARIZED BELOW ARE THE DEBTOR-IN-POSSESSION'S BEST ESTIMATE OF THE VALUE OF THE PROPERTY AS OF THE TIME OF THE FILING OF THE PLAN AND THIS DISCLOSURE STATEMENT.  THESE VALUES MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

B.    Debtor's Business and Background

The Debtor is an individual resident of Fairfax County, Virginia, where he resides with his wife.  He is an entrepreneur, but at present is not generating any regular income.  The Willners reside in a home owned as tenants by the entireties.  The house was appraised

at $5,500,000 as of September 28, 2014. U.S. Bank N.A. purports to hold a first priority deed of trust in the amount of $3,670,523.45 as of September 2014. J.P. Morgan Chase held a second mortgage in the amount of $250599.44 as of the petition date, but that has been released and forgiven. The automatic stay has been terminated as to the house, but no foreclosure has been conducted or scheduled.

      C.      Procedural Posture of the Bankruptcy Case

On December 13, 2012 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11 of title 11 of the U.S. Code (as amended, the "Bankruptcy Code"). The Debtor continues to operate as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. An unsecured creditors' committee has not been appointed in this case. No trustee or examiner has been appointed.

During the Bankruptcy case, the Debtor has sought to sell the residence, and has retained the services of Casey Margenau, a real estate agent experienced in selling high-end residential properties. Mr. Margenau's employment was approved by Order entered on November 6, 2014. Despite the stay relief granted to U.S. Bank, Mr. Margenau has continued to market the property.

On March 12, 2015, the Debtor and his wife sold a parcel of undeveloped land, for a gross sale price of $139,000. The Debtor and his wife received cash of $9938 at settlement, after closing costs, which went towards approved legal fees and other administrative and living expenses. The Debtor and his wife took back secured financing in the amount of $118,000, which will balloon in March 2016, with approximately $110,000 being due and payable to the Debtor and his wife in entireties proceeds at that time.

The Debtor and his wife have also pursued litigation against U.S. Bank and various other parties related to the purported mortgage loan on their property. The Debtor, who is a lawyer, has handled that litigation *pro se* in order to avoid incurring extensive legal fees. The main lawsuit was dismissed in the U.S. District Court for the Eastern District of Virginia without reaching the merits; that decision is on appeal to the U.S. Court of Appeals for the 4th Circuit. A related case is pending in the U.S. District Court for the District of Columbia.

      D.      Assets

The Debtor's principal assets are his residence and the proceeds from the sale of the undeveloped land, both of which are exempt from claims of individual creditors as owned as tenants by the entireties; his stock in AlphaGrip, Inc., which is fully exempt; a note receivable from AlphaGrip; causes of action against his purported mortgage creditor and its agents; household goods and his vehicle, which are exempt, and a small amount of cash in the bank. Debtor's assets are fully exempt from the claims of non-joint creditors except for note receivable from AlphaGrip and causes of action against his purported mortgage

creditor and its agents.  In the event of a Chapter 7 liquidation, it is estimated that while joint creditors would be paid in full, there would be no value in the Debtor's estate for non-joint unsecured creditors unless the litigation is successful or AlphaGrip is able to be monetized and pay its note.

  F.  Creditors Committee

No creditors committee has been formed in this case.

  G.  Professionals

The Debtor has retained the firm of Chung & Press, P.C. (Daniel M. Press), as bankruptcy counsel.   Casey Margenau has been retained as Debtor's real estate agent on a percentage commission upon sale of the property. Keller Williams was retained to sell the land and was paid its commission at settlement.

The appointment of the foregoing professionals has been approved by the Court.  Chung & Press, P.C., has had a fee application approved through October 26, 2015, in the amount of $21,214.45, of which $10,938.70 has been paid.  The balance is expected to be paid upon payment of the balance due from the land sale.  Chung & Press, P.C. expects to file a supplemental fee application to cover fees between October 26, 2015, and confirmation.

  H.  Officers/Directors and Compensation

As an individual debtor, the requirement to disclose the Debtor's officers and directors is inapplicable.   The Debtor remains as an officer and director of his corporation, AlphaGrip, Inc.  He is not presently compensated for services to AlphaGrip.

  I.  Bar Date

The bar date for the filing of pre-petition claims against the Debtor was April 17, 2013.  Under the Plan, Administrative Claims other than for legal fees must be filed by the first Business Day thirty (30) days after the Effective Date.

  **IV.**  **Classification and Treatment of Claims**

The Plan establishes 5 classes of claims, plus two categories of unclassified claims (for administrative expenses and for priority taxes).  The classes of claims are identified and treated as follows:

Unclassified claims

7

A. <u>Administrative Expenses</u>. Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the effective date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due.

The total unpaid professional fees for Chung & Press, P.C., as of confirmation are estimated to be approximately $15,000, including the approved fees and additional fees that may be incurred prior to the Effective Date. The Debtor is unaware of any other unpaid administrative expense claims.

Within this class are all pre-confirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the effective date of the Plan, if not paid sooner. After confirmation, and until the case is closed, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

B. <u>Priority Taxes</u>: The Debtor is unaware of any tax claims, and no such claims have been filed. To the extent any such claims exist, they shall be paid in full, with interest at the statutory rate on such claims, in equal quarterly cash payments commencing on the effective date of the plan, amortized over the remaining period of 5 years from the Petition Date, unless a different treatment is agreed to or provided for in the Plan.

<u>Classified Claims and Interests</u>

A. <u>Class A (Priority (non-tax) Claims)</u>: Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. The Debtor is unaware of any such claims, and no proofs of claim in this class have been filed. In the unlikely event that there are any allowed Claims in Class A, they shall be paid in full, in cash, by the Debtor on the effective date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. This class is not impaired.

B. <u>Class B (U.S. Bank N.A. secured claims)</u>: **The filed secured claim of U.S. Bank, N.A. secured by Debtor's residence** (Claim #7) shall retain its lien to the extent it exists. The automatic stay as to the property securing the claim has already been terminated. The Class B claim shall entitled to exercise all non-bankruptcy rights and remedies which it may have as to the collateral securing the claim, and its claim shall be paid in full therefrom to the extent allowed. This class is not impaired.

C. <u>[Intentionally Omitted]</u>.

D. <u>Class D (Unsecured claims owed jointly with Marguerite Willner)</u>: All allowed unsecured claims that are jointly owed with Debtor's wife, Marguerite Willner, shall be paid in full, with interest at the federal judgment rate from the effective date of the plan until paid, from the payoff of the note from the sale of the land, to the extent the claims are allowed. This class is impaired.

8

Claims in this class are:

| | | |
|---|---|---|
| Claim #1 | Discover Bank | $16,233.74 |
| Claim #3 | First National Bank of Omaha | $12,444.37 |
| Scheduled | Mrs. David Wagner | $72,200.00 |

E.   <u>Class E (General Unsecured Claims)</u>.  Holders of Class E claims shall be paid, pro rata, a total of $37,435.00, to be paid upon the payoff of the note from the sale of the land.  In addition, the Class E claims will be paid 100% of the net proceeds of (a) the Debtor's note payable from AlphaGrip as and when paid, and (b) 100% of the Debtor's net proceeds of his claims against his purported mortgage creditor and its agents.  Net proceeds shall be the Debtor's share of the proceeds after legal fees and costs of litigation or otherwise pursuing the claims.  This class is impaired.

Claims in this class are:

| | | |
|---|---|---|
| Claim #2 | Wells Fargo | $8929.26 |
| Claim #4 | FIA Card Services, N.A. | $32,206.80 |
| Claim #5 | FIA Card Services, N.A. | $9572.66 |
| Claim #8 | American Express | $39,908.38 |
| Claim #9 | Mass. Ed. Fin. Auth. | $70,200.00 |
| Scheduled | Chase | $18,418.95 |
| Scheduled | Chase | $18,142.99 |
| Scheduled | Joyce Willner | $15,000.00 |
| Scheduled | Fed Loan Servicing | $12,706.00 |
| Scheduled | Fed Loan Servicing | $11,782.00 |

This class also includes any deficiency claim to the holder of the Class B claim, to the extent allowed. Any deficiency claims must be filed by the Effective Date or shall be forever barred.   This class is impaired.

<u>AS TO ALL CLAIMS</u>:

The pro-rata share of the claimed amount of any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in an interest bearing bank account (or, if under $20,000, in Debtor's counsel's trust account) until a Final Order is entered.  When Final Orders are entered disallowing or allowing and liquidating all claims in Class E, the remaining funds set aside for that class shall be distributed to the holders of all Class E claims pro rata. Payments on all claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court.  Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor.

If any claim listed as being in Class E contends that it is a joint claim with Marguerite Willner entitled to treatment under Class D, it must file a timely objection to the Plan in order to establish the joint nature of the liability.

Debtor has attempted to match the filed claims with the scheduled claims, and has replaced the scheduled claims with claims as filed. If any unsecured creditor that was scheduled or filed a proof of claim maintains that it is not correctly listed under Class D or E, it must file a timely objection to the Plan. Upon confirmation, the listing of unsecured claims herein shall be final and binding on all creditors.

## V. **Implementation of Plan**

The Debtor shall fund this Plan from the proceeds of the sale of the undeveloped lot, and any proceeds from the sale of the home, both owned as tenants by the entireties, and from a contribution from Debtor's wife.

The proceeds of the sale of the lot shall be paid, first, to unpaid legal fees, and second, to the Class D claims, and should be sufficient to satisfy such claims in full.

The Debtor's wife will give to the Debtor as new value an amount sufficient to pay the Class E claims and any additional administrative expenses.

The Debtor and his wife shall continue to market the residence for sale with Mr. Margenau (or any successor agent) until either it is sold or foreclosed. The property may be sold by the Debtor without further motion for approval in the event it is sold for a net amount sufficient to satisfy the Class B claim to the extent allowed and any capital gains taxes on the sale. In the event the property is foreclosed, it shall be deemed abandoned by the estate immediately prior to the foreclosure sale, so that capital gains tax shall not be the liability of the bankruptcy estate. Any sale or transfer, whether by private sale or foreclosure, shall be exempt from recordation and transfer taxes pursuant to 11 U.S.C. § 1146(a).

In addition, the Debtor will pursue his claims against his purported mortgage creditor and its agents, and will continue to seek to monetize the assets of AlphaGrip, Inc., so that it can pay its note, and shall pay those proceeds to creditors as provided.

On the Effective Date of the Plan, the Debtor's existing equity interests in the Estate shall be cancelled. The sum of $37,435 shall be paid by Mrs. Willner as new value to reacquire the equity in the Estate, plus any additional amount necessary to pay administrative claims in full.

The Debtor shall retain the Assets of the estate (except any assets being sold), and shall therewith conduct his affairs and pay his ordinary living expenses while paying the creditors the amounts set forth in this plan. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves their right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts,

or to pursue any claims in any court of competent jurisdiction.  Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

### VI.     Analysis of Liquidation Value of the Estate

In the event of liquidation of the Debtor's estate, it is likely that all allowed secured claims would be paid in full, as well as joint unsecured creditors.  Apart from the litigation claims and Alpha-Grip note proceeds, it is unlikely that non-joint unsecured creditors would be paid anything on their claims, as all other material assets are exempt.  While it is not possible to estimate the proceeds of the claims and note, those will be paid to creditors until all creditors are paid in full.

There are no avoidable pre-petition transfers.

As such, after payment of secured claims, it is clear that unsecured creditors would fare better under this plan than in a Chapter 7 liquidation.

### VII.    Repayment Projections

The Debtor projects that all allowed secured claims and joint unsecured claims will be paid in full.   Class E will be paid approximately 16% (plus proceeds of litigation and the Alpha-Grip note).

### VIII.   Tax Consequences

The Debtor is not qualified to advise creditors of the specific tax ramifications to them of confirmation of the Plan and therefore makes no representations in this regard. However, the Debtor is not aware of any potential material federal tax consequences to creditors that would result from confirmation of the Plan. Each creditor is urged to consult with a tax advisor as to such matters.

With respect to the Debtor himself, the Debtor does not anticipate any material tax consequences. Any forgiveness of indebtedness would be exempt from taxation under IRC § 108 due to the discharge in bankruptcy. There would likely be a capital gain on the sale of the residence (if not foreclosed), but that would be offset in part by capital loss carry-forwards.  The net estimated capital gain tax liability to the estate on a $5,000,000 sale would be approximately $100,000.

IX.     **Income**.  Debtor's income has been a steady $25,000 per year, or less. Because the payments on secured and priority debt, along with income tax liability, will equal or exceed that amount, there is no projected disposable income.  Debtor's personal, family and household expenses will continue to be paid by Debtor and his spouse.

11

### X.  Modifications or Withdrawals of the Plan

The Debtor may alter, amend, or modify the Plan under § 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code. The Debtor may also alter, amend, or modify the Plan under § 1127(b) of the Bankruptcy Code, following the Confirmation Date but prior to the Effective Date. The Debtor may revoke or withdraw the Plan prior to the Confirmation Date. If the Plan is revoked or withdrawn prior to the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn prior to the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to § 1127(e).

### XI.  Objections to Claims, Counterclaims, and Avoidance Actions

The Debtor believes that the claims resolution process should not delay Confirmation of the Plan.  The Debtor reserves the right to file objections to any Claims, either as currently filed or as may be amended.  In order to expedite payments to creditors, the Debtor seeks Confirmation notwithstanding the fact that it may dispute certain Claims. The fact that the Debtor has not objected to a particular Claim does not mean that the Debtor will not object to such Claim. Accordingly, the Debtor makes no representations either in the Plan or this Disclosure Statement as to the validity of any Claim filed, and Creditors should not make any assumption based upon the fact that no objection has yet been filed to any individual Claim.

### XII.  Miscellaneous Plan Provisions

A.  Executory Contracts and Unexpired Leases.

Pursuant to Article VI of the Plan, any pre-petition Executory Contracts and Leases in effect as of the Effective Date and not specifically assumed will be deemed rejected as of the Effective Date.  Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor or his Estate, Assets, or properties. All Rejection Claims shall be Class E General Unsecured Claims.

**The Debtor maintain that there are no cure amounts necessary with respect to the assumption of any Executory Contract or/and Lease assumed hereunder, and that there are no pre- or post-petition defaults on any such contract or lease.  To the extent that any party to any such Executory Contract or/and Lease maintains that there is an amount due to cure any pre- or post-petition default, it must file a timely objection to**

**this plan asserting the amounts claimed to be due. Absent such an objection, all leases and contracts shall be deemed current as of the confirmation date.**

    B.    <u>Retention of Jurisdiction, Closing</u>.

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Plan provides for the Bankruptcy Court to retain exclusive jurisdiction over all matters relating to the Plan, including the allowance of Claims and the adjudication of any Avoidance Actions. Upon substantial consummation of the plan, the case may be closed, but shall be subject to reopening to enforce the terms of this Plan and to enter a discharge. This provision serves to avoid the need to pay U.S. Trustee fees after substantial consummation.

**XIII.   <u>Discharge</u>**

Upon completion of all payments due under the plan, the Debtor shall be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code. Any payment on the Class E claims from the proceeds of the Note or litigation shall not be deemed payments under the plan for purposes of Code § 1141(d)(5)(A), such that the Debtor shall be entitled to his discharge upon completion of payments from the sale of the property.

**XIV.   <u>Conclusion</u>**

As stated previously, the Debtor is the proponent of the Plan and urges you to vote to accept the Plan. The information and materials provided in this Disclosure Statement are intended to assist you in voting on the Plan in an informed fashion. Since confirmation of the Plan will be binding on your interests, the Debtor invites you to review these materials and make such further inquiries as may be appropriate.

  Dated:   January 4, 2016.

                                                           Respectfully submitted,

                                                         /s/ Daniel M. Press
                                                       Daniel M. Press, VSB 37123
                                                       Chung & Press, P.C.
                                                       6718 Whittier Ave., Suite 200
                                                       McLean, VA 22101
                                                       (703) 734-3800
                                                       (703) 734-0590 fax
                                                       dpress@chung-press.com
                                                       Counsel to the Debtor